IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE VELASQUEZ AND JOSE ORTIZ, INDIVIDUALLY AND ALL OTHERS SIMILARLY SITUATED, | § § § § | |
| Plaintiff, | § | NO. 15-CV-2329 |
| v. | § § | |
| WCA MANAGEMENT COMPANY, L.P. | § § § | JURY DEMANDED |
| Defendants. | § § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTION TO DISMISS CLAIMS OF CERTAIN OPT-INS

Now comes WCA Management Company, L.P. ("Defendant" or "Company") and pursuant to Rule 56, FED. R. CIV. PROC., files this Motion for Summary Judgment and, in the alternative, its Motion to Dismiss the Claims of Certain Opt-Ins, and respectfully shows the following.

### Introduction

This suit is brought as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"). Plaintiffs moved for Class Certification (Dkt # 11) which Defendant opposed (Dkt # 13). That Motion is pending. As discussed below, the Court should defer ruling on that Motion and other recently filed Motions by Plaintiffs (Dkt #s 60, 63) until after it has considered and decided this Motion for Summary Judgment and alternative Motion to Dismiss Certain Opt-Ins.

Statement of Facts

The undisputed material facts, as opposed to the unsupported assertions of Plaintiffs, are set forth in the Declaration of Matt Graham and its exhibits, which are attached to Defendant's Opposition to Plaintiffs' Motion for Class Certification (Dkt # 13, 13-1), a copy of which is attached as Exhibit 1 ("Graham Dec."), and the deposition testimony of named Plaintiffs, Jose A. Velasquez and Jose Ortiz (copies of the pertinent pages of each deposition are attached as Ex. 2 (Velasquez's Deposition) and 3 (Ortiz's Deposition). Briefly, Defendant paid its residential drivers[1] under three distinct pay systems during the three years prior to the filing of this suit. Graham Declaration (Dkt # 13-1 ¶¶ # 6-9; Exs. A-D; Velasquez Depo. 11).

For the years 2012 and 2013, residential drivers (and helpers) were paid hourly and received additional incentive (or supplemental) pay for things such as assisting on a second collection route. (Graham Dec. ¶¶ 6, 7). Indeed, Plaintiffs acknowledged that they were paid hourly, received incentive pay for certain activities, and received overtime pay of one and one-half times on their hourly and incentive pay in 2012, 2013. They were paid in this manner until their pay was individually converted to a flat day rate of pay for route completion. (Graham Dec. ¶6-7; Ortiz Depo. 22, 29; Velasquez Depo. 6). For 2012, base hourly pay and certain incentive pay, such as show-up pay of $5.00 per day, was paid, with overtime calculated by dividing total pay by the total hours worked in the work week. (Graham Dec. ¶6).[2]

---

[1] Plaintiffs and the opt-ins, save four, are or were residential drivers at Defendant's Highway 6 facility. Three of the non-residential driver opt-ins are helpers on the residential garbage collection vehicles, and one, Michael Streeter, was a salaried, exempt supervisor. One of the residential drivers, Lazaro Echaniz. (Dkt # 55), ceased being a residential driver and became a commercial driver, on an entirely different and unrelated pay system, as of May 23, 2014.

[2] Plaintiffs assert they were told they would make around $145 a day (Ortiz Depo. 24) or $125 a day (Velasquez Depo. 6) at their time of hire. Doing some simple math, based upon a 60 hour week, such statements were accurate (Ortiz--60 hours x $12 = $720 + 20 overtime hours x $6 = $840 + $30 show up pay ÷ 6 days = $145 per day; Velasquez--60 hours x $11 = $660 + 20 overtime hours x $5.50 = $110.00 = $770 + $30 = $800 ÷ 6 days = $128 per day).

2

In 2013, the incentive pay components changed. The base hourly wage and some of the incentives remained, but a new incentive ("supplemental pay") was added. Again, the total wages earned in the workweek were divided by the total hours worked to determine overtime pay due on the non-hourly paid portion of total pay. (Graham Dec. ¶7). The residential drivers did not understand how the pay system(s) in 2012-2013 worked. (Ortiz Depo. 7-8, 11, 19-21, 23, 29; Velasquez Depo. 8-9; 17, 18, 19, 21, 24, 28, 30-31, 35). After many complaints, the Company, in 2014, began converting the residential drivers (and helpers) to a day rate of pay for route completion, with additional supplemental pay for doing other non-route work such as covering part of a route because of a driver's absence ("split pay"). (Graham Dec. ¶ 8; Velasquez Depo. 6-11, 23, 25, Depo. Ex. Bates #039, 040). The conversion process was completed for all residential drivers and helpers prior to August 10, 2015, which is the effective date of the collective bargaining agreement ("CBA"), that covers all drivers and helpers at the facility. (Graham Dec. ¶ 9).[3]

All of the Plaintiffs' and Opt-Ins' Declarations make an identical and unsupported assertion – "I did not get paid overtime of one-and-one-half times my regular rate of pay for the hours I worked over 40 hours in a work week." Plaintiffs' and Opt-Ins' Declarations at ¶ 7.[4] The undisputable facts, as shown by the payroll documents Plaintiff's produced (*e.g.*, Exs. 6-10 hereto) as well as the Graham Declaration and its exhibits (Ex. 1), is that Plaintiffs and the Opt-Ins were <u>properly paid overtime</u> at all relevant times. Other than the allegation made in their

---

[3] While all of the Plaintiffs' and Opt-Ins' Declarations (¶4) declare they were paid on a flat daily rate (*e.g.*, Dkt # 11-2 (Velasquez), 27, 36, 37, 39, 40, 41, 46, 48, 50, 59), the Declarations are demonstrably wrong in this regard. Aside from the admission of Plaintiffs that they were hourly paid in 2012, 2013 and thereafter until converted to a flat day rate of pay for route completion, Plaintiff Ortiz and opt-in Plaintiff Jose Jovel were never converted to a day rate of pay prior to their respective terminations. (Ortiz Depo. 22; Graham Dec. ¶ 8). The paragraph numbers in the Declarations filed by the Plaintiffs with this Court vary due to numbering errors, but the statements are the same. *See, e.g.*, Dkt # 11-2 (Ortiz, Jovel, Pineda, Hernandez), 38, 42, 43, 44, 56.
[4] *See* note 3, *supra*, regarding paragraph numbering.

3

Complaint that Defendant "manipulated" their pay to make it appear as if overtime was paid, <u>no</u> <u>evidence</u> <u>or</u> <u>factual</u> <u>basis</u> for this assertion has been advanced.

The Company's strict policy was and is that employees will not perform "off the clock" work under any circumstances. (Ex. 4 hereto). This policy was known to both Plaintiffs. (Velasquez Depo. 5; Ortiz Depo. 14, 16). Indeed, Velasquez testified <u>all</u> of his work was on the clock, and, further, that the Company's time cards would accurately reflect the hours he worked. (Velasquez Depo. 12, 25, 34-35, 40).[5] Ortiz testified that on a few unspecified occasions, he assisted Company supervisors, on request, arranging truck keys for the next day or doing preventive maintenance on his truck after clocking out, but he also testified he was on the clock and properly paid for most of his time. (Ortiz Depo. 13, 17-18, 23, 31). Further, the supervisors did not direct Ortiz to clock out; rather, they stated they did not want him working more than 60 hours in the week. (Ortiz Depo. 30). Nonetheless, on occasion, the supervisors would direct him to assist on a second route even though he told them he was close to 60 hours. (*Id.* 31).

As the undisputed evidence (Graham Dec. ¶6-10) shows, the calculation of an employee's "regular rate of pay" under the FLSA <u>requires</u> mathematical calculations involving the total pay and the total hours worked in a workweek. Despite Defendant's repeatedly pointing out the lack of evidence in this matter (Dkt #s 13, 16), no evidence beyond the Plaintiffs' conclusory assertions has been forthcoming. (*See* Dkt #s 15, 17). The reason is, there is none! Indeed, Plaintiffs produced their payroll stubs and Velasquez's post-2014 day rate overtime calculation sheets provided to him each week by Defendant in response to Defendant's Requests for Production of Documents. (*See, e.g.*, Exs. 6-10). These documents confirm the statements in the Graham Declaration (and exhibits) that overtime was properly paid. In short, the Graham

---

[5] Velasquez and Ortiz also testified that on occasion the extra pay they were promised for assisting a second route was not paid. When they complained, the oversight was corrected. (Velasquez Depo. 32-34; Ortiz Depo. 13-14).

4

Declaration (Dkt 13-1, Ex. 1) is unchallenged and has remained so since presented in response to Plaintiffs' Motion for Certification. (Dkt # 11-1).

On August 10, 2015, the residential drivers and helpers became covered by a collective bargaining agreement ("CBA") with Teamsters Local 988. (Graham Dec. ¶12; pertinent portions of the CBA are attached hereto as Ex. 5). Insofar as material in this matter, the CBA expressly provides the Company "will comply with the requirements of the Fair Labor Standard Act," including the payment of overtime over 40 hours in the workweek. (Ex. 5, Art. 14, G. & B). It further provides grievance and arbitration provisions covering any dispute regarding the application or interpretation of the CBA's terms. (Ex. 5, Arts. 17 & 18). Finally, it sets forth the negotiated day rate of pay for residential drivers and helpers. (Ex 5, Art. 24, B. 1 & 2).

These facts demonstrate that the parties clearly and unmistakably intended post CBA issues regarding the subject of wages and FLSA compliance to be submitted to its grievance and arbitration process.

## Summary Judgment Standard

Summary Judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). It is the movant's burden to show the absence of a material issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Weaver v. CCA Indus. Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). Under Rule 56(c), the moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)).

5

The non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228 (5th Cir. 2003); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). The non-movant's burden is not met by mere reliance on the allegations or denials in his pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n. 13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" or "only a scintilla of evidence" do not meet the non-movant's burden. *Whelan*, 319 F.3d at 230; *Celtic Marine Corp. v. James C. Justice Cos.*, 760 F.3d 477, 481 (5th Cir. 2014); *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). Conclusory declarations and unsupported subjective beliefs are insufficient to create a genuine issue of material fact in the face of conflicting probative evidence. *Kariuiki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013) (citing *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 482 (5th Cir. 2002)). *See also Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1048 (5th Cir. 1996); *Douglas v. United Servs. Auto Ass'n*, 65 F.3d 452, 459 (5th Cir. 1995) *upheld on point and revised on other grounds*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).

<u>Ruling on This Motion Prior to the Consideration</u>
<u>Motion for Class Certification is Appropriate</u>

In cases such as this, where the ultimate issue turns on undisputed facts and is an issue of law, ruling on a summary judgment motion before a class certification motion is imminently appropriate. This is particularly true where the factual deficiencies of Plaintiffs' case have been pointed out to them. It has the further beneficial effects of conserving the time and resources of the Court and litigants, preventing escalating costs and needless proceedings. *See, e.g., Marx v. Centran Corp.*, 747 F.2d 1536, 1552 (6th Cir. 1984) ("to require notice to be sent to all potential plaintiffs in a class action when the underlying claim is without merit is to promote inefficiency for its own sake"); *Floyd v. Bowen*, 529 F.2d 534 (5th Cir. 1987); *Kim v. Commandant Defense Lang. Insti.*, 772 F.2d 521, 523-24 (9th Cir. 1985) (Rule 23 class action); *Vallejo v Garda CL Southwest, Inc.*, 56 F. Supp. 3d 862, 874 (S.D Tex., 2014) (Rosenthal, J.), *Liebesman v. Competitor Grp.*, Civ. Act. No. 4:14-cv-01653, 2016 U.S. Dist. LEXIS 5246*2-3 (E.D. Mo. Jan. 5, 2016)); *Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 957 (W.D. Mich. 2009).

Ruling on this Motion under the undisputed facts and law will materially advance this litigation to its conclusion.

<u>Argument and Authorities</u>

**1. Defendant Properly Calculated and Paid Overtime.**

Defendant's authorities and arguments regarding its proper payment of overtime also are set forth in its Opposition to Plaintiffs' Motion for Class Certification (Dkt # 13 at 5, 7-9) and the Graham Declaration and its Exhibits (Dkt # 13-1), which are fully incorporated herein as Exhibit 1.

Under the FLSA, the "regular rate of pay" is an hourly rate, which is determined mathematically when an employee is paid by one or more pay systems other than solely on than

7

an hourly rate of pay. See 29 C.F.R. § 778.108, *et seq.* (setting forth examples of such pay systems and the calculations of the "regular rate of pay" thereunder).[6] The regular rate will vary from workweek to workweek because the total dollars earned and the total hours worked by an employee are not constant; thus, hours worked and/or total earnings will vary from week to week and so will the "regular rate of pay." *See Overnight Mtr. Transp. Co. v. Missel*, 316 U.S. 572, 579-80, n. 16 (1942) ("[Salaried] [w]ages divided by hours equals regular rate. Time and a half regular rate for hours employed beyond statutory maximum equals compensation for overtime hours." ); *Walling v. Youngerman Reynolds Hardwood Co.*, 325 U.S. 419, 424-25 (1943) (Plaintiff's regular rate is "an actual fact. Once the parties have decided upon the amount of wages.... the determination of the regular rate becomes a matter of mathematical computation."); *Dufrene v. Browning Ferris Ind.*, 207 F.3d 264, 268 (5th Cir. 2000), *cert. denied*, 531 U.S. 825 (2001) (upholding pay calculations for a day rate of pay under 29 C.F.R. § 778.112).

Defendant's mathematical "manipulation" of Plaintiffs' pay to derive their FLSA "regular rate of pay" and the overtime rate for hours over 40 in a work week was lawful and proper. Plaintiffs simply were not able to understand how the various incentives were calculated or what was entailed. Defendant's calculation of the regular rate was correct, and Plaintiffs have not shown even a scintilla of evidence sufficient to defeat summary judgment. Summary judgment is warranted based upon the undisputed facts and should be granted.

### 2. The Ortiz Alleged "Off-the-Clock" Claim Fails.

There remains only Ortiz's vague claim that he sometimes did work "off the clock". No such claim appears in the Complaint (Dkt # 1), nor in the Declaration he filed with the Court (Dkt # 11-2), nor in the proposed Amended Complaint (Dkt # 63). The alleged occasions of

---

[6] It is clear that the regulations are <u>examples and not limitations</u> on how an employer can structure its pay system. *See Lalli v. General Nutrition Centers*, 2016 U.S. App. Lexis 2479, *5-6 (1st Cir. Feb. 12, 2016); *Allen v. Board of Ed. For Bibb Cnty.*, 475 F. 3d 1306, 1313 (11th Cir. 2007); DOL Opinion Ltr. 953 (June 22, 1967).

8

such work occurred only after he returned to the yard and had punched out. Ortiz offered no approximation of the number of occasions, or of the amount of time involved when this occurred. This is legally insufficient to avoid summary judgment. It is Ortiz's burden to establish the amount, extent and nature of such claimed "off the clock" work with definite and certain evidence upon which a reasonable approximation can be made. *See Anderson v. Mt. Clements Pottery,* 328 U.S. 680, 686-87 (1946); *Holaway v. Stratasys, Inc.,* 771 F.3d 1057, 1059 (8th Cir. 2014); *Lindsay v. Clear Wireless,* No. 13-cv-834, 2016 U.S. Dist. Lexis, 31663*19 (D. Minn. March 10, 2016). While *specific* approximation of hours and days worked by an employee is allowed where the Company fails to maintain records[7], general conclusory statements and speculation are not sufficient. *See Holaway v. Stratasys, Inc.,* 771 F.3d at 1059-60; *Faery v. Weigand-Omega,* No. 4:11-cv-02519, 2012 WL 3063899 (S.D. Tex. July 26, 2012) (Atlas J.).

An employee cannot recover where he fails to notify the employer of the overtime work or prevents the employer from knowing of it. This is particularly so where a company, as here, has a published, known policy flatly prohibiting any work "off the clock." (Ortiz Depo. 14; Ex. 4 hereto). *See Fairchild v. All-American Check Cashing, Inc.* No. 15-60190, 2016 U.S. App. Lexis 1290 (5th Cir. Mar. 18, 2016, on rehearing); *Millington v. Morrow Cnty Bd. Of Commrs.,* No. 2:06-cv-347, 2007 WL 2908817*1 (S.D. Ohio Oct. 4, 2007).

As the *Fairchild* court further observed, an employee is not at liberty to ignore or flaunt his employer's prohibitions regarding overtime work. *Fairchild,* 2016 U. S. App. Lexis *8-10; Accord, *Wood v. Mid-America Mgmt. Corp.,* 192 Fed. App. 378, 381 (6th Cir. 2006) (employee cannot undermine his employer's efforts to comply with FLSA by working off the clock); *Davis*

---

[7] Here, the Company maintained records, punched by Plaintiffs themselves and believed by the Company to be accurate. *See Whitaker v. Pacific Enterprises Oil Company,* 956 F2d 1170, 1992 WL 44729 *1-2 (10th Cir. 1992).

9

*v. Food Lion,* 792 F.2d 1274, 1278 (4th Cir. 1986); *Millington,* 2007 WL 2908817*1 (no recovery for employee who works overtime contrary to employer's policy and fails to report it). Such is the case here. Defendant has a clear and explicit policy prohibiting working off the clock under any circumstances. (Ex. 4). Ortiz knew the policy and simply interpreted his supervisor's requests for help, after he had already clocked, out as a directive, when none in fact was given.

In sum, Ortiz's unsupported claims that he performed "off the clock" are insufficient to meet his burden of proof to show by just and reasonable approximation, the specific tasks he performed and the number of such hours worked. Summary judgment on this claim should be granted.

### 3. Alternatively, Dismissal of the Claims of Some Opt-ins' Is Required.

Neither of the named Plaintiffs, nor any of the initial group of opt-ins, were employed by Defendant at the time the August 10, 2015 CBA became effective. (Ex. 5). However, a number of the more recent opt-ins in this case are current employees of Defendant or were employed by it after the CBA became effective. Because they are covered by the CBA, the clear and express terms of the CBA require dismissal of their claims in this litigation for referral to arbitration.

The CBA covers residential drivers and helpers, among others. (Graham Dec. ¶ 12; Ex. 5). The CBA expressly covers the issue of whether Defendant has complied with the requirements of the FLSA. Article 14, § G provides the Company "will comply with the requirements of the Fair Labor Standards Act." An individual employee, or the Union, can file a grievance over alleged violations of the Company's undertakings under the Agreement. (*Id.*, Article 17). If unresolved, the claimed violation can be taken to arbitration before a mutually selected neutral arbitrator. (*Id.*, Article 18). Further, the CBA sets forth the day rates of pay for

10

Residential Drivers and Helpers (*Id.*, Article 24), as well as the Company's obligation to pay overtime for hours worked in excess of 40 per workweek. (*Id.*, Article 14, B.).

Following the Supreme Court's decision in *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), the Fifth Circuit observed arbitration was required where the CBA waived the right to a judicial forum by specifically identifying the relevant statute and providing for its arbitration. *Ibarra v. United Parcel Serv.*, 695 F. 3d 354, 359 (5th Cir. 2012) (citing cases). And in *Gilbert v. Donahoe*, 751 F.3d 303, 310 (5th Cir. 2014), the court held that the plaintiff was required to arbitrate his Rehabilitation Act claim where the statute and its prohibitions were expressly incorporated into the CBA. Here, the CBA does just that – the Company must comply with the FLSA. (Ex. 5, Article 14). An alleged failure to do so gives rise to a grieveable/arbitrable dispute under the CBA. *See also Vallejo v. Garda SW Inc.*, No. H-12-cv-0555 (S. D. Tex., January 30 2013, Rosenthal J.); *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1019-20 (D. Minn. 2015).

Accordingly, opt-in Plaintiffs Carlos Escobar (Dkt # 21), Roland DeLaCruz (Dkt # 22), Jose Madrid (Dkt # 24), Carlos Madrid (Dkt # 25), Marceleno Machado (Dkt # 26), Luis Barrera (Dk t# 28), Juan Herrera Fuentes (Dkt # 34), Lino Villagomez (Dkt # 45), Jose M. Diaz (Dkt # 47), Jose Rios Herrera (Dkt # 51) ), Balteza Garcia (Dkt # 53), Lazaro Echaniz (Dkt # 55), and Ascencion Canales (Dkt # 61), were employed on August 10, 2015, and most remain employed by WCA under and subject to the terms of the CBA.[8] Defendant submits that if Summary Judgment is not granted as to the underlying FLSA claims of Plaintiffs and all existing opt-ins, the above-identified opt-ins must be dismissed from the litigation to pursue arbitration of their respective claims, if desired, under the CBA. If the Court determines to order notice to issue

---

[8] Jose M. Diaz terminated on August 17, 2015; Marcelino Machado terminated on March 2, 2016 and Lazaro Echaniz terminated on October 13, 2015.

pursuant to Plaintiffs' Motion for Certification (Dkt #11), then as argued in Defendant's Opposition (Dkt #13), notice should <u>not</u> be issued to those persons employed by Defendant on and after August 10, 2015, the effective date of the CBA, since all such claims are relegated to the arbitration forum.

Similarly, opt-in Michael Streeter was, at all relevant times, a salaried supervisor in charge of the residential drivers and helpers. (Graham Dec. 11). Streeter was on the bi-monthly, salaried payroll (Ex. 11), not the weekly payroll with the drivers (compare Exs. 6-10). As such, he is not a proper opt-in in this litigation and should be dismissed from the suit for this reason. *See Blake* v. *Hewlett-Packard Co.*, Civ. Act. No. 4:11-cv-0592, 2013 WL 3753965*11 (S.D. Tex. July 11, 2013) (Harmon, J.); *Long* v. *BDP International*, Civ. Act. No. 4:12-cv-01446 (Dkt # 89, Order on Motion for Reconsideration, S.D. Tex. March 14, 2013) (Atlas, J.).[9]

WHEREFORE, PREMISES CONSIDERED, Defendant prays that its Motion for Summary Judgment be in all respects granted, and that Defendant recover its cost of suit and have such other and further relief to which it is entitled, or, alternatively, that those opt-in plaintiffs employed by Defendant on and after August 10, 2015, and opt-in Michael Streeter be dismissed from the litigation without prejudice.

---

[9] The varying circumstances of the opt-ins—some are helpers, one is an exempt, salaried supervisor, two were never on a flat day rate of pay for route completion--coupled with the individualized issues such as allegedly not getting paid for helping on a second route, and the calculations required, all dictate that certification in this case is not appropriate.

12


Dated April 5, 2016.  Respectfully submitted,

>/s/ A. John Harper II
>A. John Harper III (Attorney-in-Charge)
>State Bar No. 24032392
>Federal ID No. 577124
>A. John Harper II
>State Bar No. 903100
>Federal ID No. 5198
>Sarah B. Morton
>State Bar No. 24066151
>Federal ID No. 966164
>LITTLER MENDELSON
>A PROFESSIONAL CORPORATION
>1301 McKinney Street, Suite 1900
>Houston, TX  77010
>713.951.9400 (Telephone)
>713.951.9212 (Telecopier)
>AHarper@littler.com
>
>ATTORNEYS FOR DEFENDANT
>WCA MANAGEMENT COMPANY, L.P.

## CERTIFICATE OF SERVICE

I certify that, on this 5th day of April, 2016, a true and correct copy of the foregoing was electronically filed with the Court and sent via ECF to:

Alfonso Kennard
Alfonso_kennard@kennardlaw.com
Michelle.miller@kennardlaw.com
Kennard Richard, P.C.
2603 August Dr., Suite 1450
Houston, TX 77057

>/s/ A. John Harper II
>A. John Harper II