United States District Court
Southern District of Texas

**ENTERED**

August 23, 2016

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE VELASQUEZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-02329 |
| | § | |
| WCA MANAGEMENT COMPANY, L.P., | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending in the above-referenced cause are Jose Velasquez ("Velasquez") and Jose Ortiz's ("Ortiz") (collectively, "Plaintiffs") Motion for Class Certification ("Motion for Class Certification") (Doc. 11), Plaintiffs' Motion to Extend Deadlines ("Motion to Extend") (Doc. 60), Plaintiffs' Motion for Leave to Amend Pleadings and Add New Parties ("Motion to Amend") (Doc. 63), and Defendant WCA Management Company's ("WCA") Motion for Summary Judgment and Alternative Motion to Dismiss Claims of Certain Opt-Ins ("Motion for Summary Judgment") (Doc. 64). Having considered the motions, responses, relevant law, and for the reasons set forth below, the Court is of the opinion that Plaintiffs' Motion for Class Certification and Motion to Amend should be granted and Defendant's Motion for Summary Judgment should be denied. Plaintiffs' Motion to Extend is now moot.

### I. Background

Plaintiffs Velasquez and Ortiz are former employees of WCA, a Houston-based, non-hazardous solid waste management company where they were employed as drivers. (Docs. 1 at ¶¶ 1–2, 6, 11-2 at 1–6.) Plaintiffs claim that WCA paid them a fixed daily rate for "on-the-clock" time, but failed to properly calculate their regular rate and failed to accurately record and report the hourly pay rates on their payroll records. (Doc. 1 at ¶ 17–19.) Instead, when they worked

more than 40 hours in a week, Plaintiffs allege that WCA manipulated records to make it appear that Plaintiffs were being paid overtime when they were not. (*Id.*)

Seeking to recover those lost wages, in August 2015, Velasquez and Ortiz filed this lawsuit against WCA, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219. (*Id.*) Plaintiffs brought their claims on behalf of themselves and all others similarly situated and identified their proposed class as all persons who had worked for WCA in the preceding three years and were not paid overtime.[1] (*Id.* at ¶ 34.) Within a month of filing their complaint, four other individuals filed notices of consent to join their collective action and Plaintiffs filed their Motion for Class Certification.[2] (Docs. 4, 6–8, 11.) Over the next six months, eighteen other individuals filed their notices of consent.[3] (Docs. 21–28, 43, 45, 47, 49, 51, 53, 55, 58, 61.)

On January 13, 2016, a Scheduling Order was entered in the case, designating March 30, 2016, as the deadline for motions to amend and add new parties. (Doc. 32.) With the amendment deadline approaching, and with their Motion for Class Certification still pending, on March 15, 2016, Plaintiffs filed their Motion to Extend, seeking a 60-day extension of the amendment deadline. (Doc. 60 at ¶ 4.) On March 30, 2016, however, Plaintiffs filed their Motion for Leave

---

[1] Specifically, Plaintiffs identified their proposed class as:

> All persons who, at any time during the three (3) years immediately preceding the filing of this lawsuit, worked at any business that was owned, operated, and/or acquired by Defendant, who were not paid overtime at a rate of one and one-half times their regular rate for hours worked in excess of forty (40) per week.

(Doc. 1 at ¶ 34.)

[2] The first four individuals to opt-in are: Jose Hugo Jovel (Doc. 4), Jose A. Hernandez (Doc. 6), Jose Angel Pineda (Doc. 7), and Michael A. Streeter (Doc. 8).

[3] The remaining 18 to join are: Carlos Cruz Escobar (Doc. 21), Rolando DeLa Cruz (Doc. 22), Jose Franklin Mendez (Doc. 23), Jose Luis Madrid (Doc. 24), Carlos Antonio Madrid (Doc. 25), Marcelino Machado (Doc. 26), Jose Sorto (Doc. 27), Luis Barrera (Doc. 28), Juan Herrera (Doc. 34), Norma Rosario Gomez Melindez (Doc. 43), Lino Villagomez (Doc. 45), Jose Diaz (Doc. 47), Manuel De Jesus Barrera (Doc. 49), Jose B. Rios (Doc. 51), Baltazar Garcia (Doc. 53), Lazaro Cordero Echaniz (Doc. 55), Adan Flores (Doc. 58), and Ascension Canales (Doc. 61).

to Amend, seeking to add as party plaintiffs the twenty-two individuals who filed notices of consent, thereby mooting their earlier extension request. (Doc. 63.) Defendant opposes Plaintiffs' motions (Docs. 13, 16, 65) and recently filed its Motion for Summary Judgment (Doc. 64), which Plaintiffs oppose (Doc. 67, 70). All of the parties' motions are now ripe for adjudication.

## II.  The Motion for Class Certification

In their Motion for Class Certification, Plaintiffs request that the Court conditionally certify the following class: "All individuals, who at any point, during the past three years prior to the filing of this lawsuit, worked for Defendant as drivers or driver's helpers[4] and who did not receive overtime pay."[5] (Doc. 11 at 7.) In asserting that certification is appropriate, Plaintiffs argue that all drivers were paid according to the same illegal pay scheme.[6] (Doc. 15 at 2.)

In response, WCA first argues that Plaintiffs' claims are "conclusory, factually unsupported," and that "[c]ontrary to Plaintiffs' assertion, the undisputed evidence establishes they were properly paid for all of their overtime hours as required by the FLSA." (Doc. 13 at 4.)

---

[4] Here, Plaintiffs reference "drivers or driver's helpers," but in their proposed notice Plaintiffs only reference "drivers." (Doc. 11-1.) Later, in their reply, Plaintiffs likewise state that they are seeking only conditional certification of "former employees of Defendant who were employed as drivers and did not receive proper overtime pay." (Doc. 15 at 2.) Nevertheless, four of the twenty-four declarations are from "helpers." (*See* Docs. 29, 35/39, 36, 42.) The Court will thus assume that Plaintiffs seek certification of a single class: "drivers and driver's helpers."

[5] In both their original and amended complaints, Plaintiffs' proposed class varies from that described in their Motion for Class Certification:

> All persons who, at any time during the three (3) years immediately preceding the filing of this lawsuit, worked at any business that was owned, operated, and/or acquired by Defendant, who were not paid overtime at a rate of one and one-half times their regular rate for hours worked in excess of forty (40) per week.

(Docs. 1 at ¶ 34, 63-1 at ¶ 58.) This proposed class is very broad. However, because this is not the class that was described in the Motion for Class Certification, the Court declines to address whether it would survive class-certification analysis.

[6] Plaintiffs allege that all drivers were promised a flat daily rate for completing their regular collection routes and WCA then manipulated payroll records to make it appear that Plaintiffs were being paid overtime.

According to WCA, because Plaintiffs "have advanced no evidence that the Defendant improperly calculated the 'regular rate of pay' so as to deprive them of the proper amount of pay required by the FLSA," the "evidence does not support certification." (*Id.* at 7.) WCA further argues that because the initial plaintiffs were not employed by WCA when the collective bargaining agreement ("CBA") took effect,[7] "none of the employees who are or have been covered by the terms of the CBA are 'similarly situated' to Plaintiffs" and should, therefore, not be covered under any certified class. (*Id.* at 4.)

### A.  Legal Standard

One of the FLSA's objectives is to regulate overtime-pay requirements. *See* 29 U.S.C. §§ 202, 207. To this end, section 207(a) of the FLSA requires that covered employers compensate their nonexempt employees at overtime rates for time worked in excess of forty hours in a work week. *Id.* § 207(a).[8] Section 216(b) of the FLSA creates a cause of action for employees against

---

[7] On August 10, 2015, the WCA's drivers and helpers became covered by a collective bargaining agreement with Teamsters Local 988. (Doc. 64 at 5.) The CBA provides that "[t]o the extent that employees are paid on a day rate and/or receive incentive pay, the Company will comply with the requirements of the Fair Labor Standards Act." (Doc. 64-5 at 4.) It goes on to outline the grievance and arbitration procedures that apply to disputes regarding the application or interpretation of the CBA's terms. (*Id.* at 6–8.)

[8] Section 207(a) of the FLSA provides as follows:

> **(a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions**
> **(1)** Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
> **(2)** No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, and who in such workweek is brought within the purview of this

employers who are alleged to have violated one of the provisions of the FLSA. 29 U.S.C. §
216(b). Section 216(b) provides:

> An action . . . may be maintained against any employer . . . by any one or more
> employees for and in behalf of himself or themselves and other employees
> similarly situated. No employee shall be a party plaintiff to any such action unless
> he gives his consent in writing to become such a party and such consent is filed in
> the court in which such action is brought.

*Id.*

In light of this language, the Fifth Circuit has distinguished a section 216(b) action from a
Rule 23 class action, noting that unlike a class action's opt-out procedure, 216(b) establishes an
opt-in scheme under which plaintiffs must affirmatively notify the court of their intention to
become parties to the suit. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995),
*overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). District courts
have the discretion to implement 216(b)'s opt-in procedure by facilitating notice to potential
plaintiffs. *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 800 (S.D. Tex. 2010) (citing
*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). Such "notice should be 'timely,
accurate, and informative.'" *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 809 (S.D.
Tex. 2003) (quoting *Hoffman-La Roche*, 493 U.S. at 172).

---

subsection by the amendments made to this chapter by the Fair Labor Standards
Amendments of 1966—
**(A)** for a workweek longer than forty-four hours during the first year from the
effective date of the Fair Labor Standards Amendments of 1966,
**(B)** for a workweek longer than forty-two hours during the second year from such
date, or
**(C)** for a workweek longer than forty hours after the expiration of the second year
from such date,
unless such employee receives compensation for his employment in excess of the
hours above specified at a rate not less than one and one-half times the regular
rate at which he is employed.

29 U.S.C. § 207(a).

Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join a FLSA collective action: (1) the two-step *Lusardi* approach, and (2) the class action-based *Shushan* approach. *McKnight*, 756 F. Supp. 2d at 800 (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990)). The Fifth Circuit has not determined which method is more appropriate. *Mooney*, 54 F.3d at 1216. However, most courts, including in this district, use the *Lusardi* approach. *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 860–61 (S.D. Tex. 2012) (citations omitted); *McKnight*, 756 F. Supp. 2d at 800–01 (collecting cases).

The *Lusardi* approach has two steps: the "notice stage" and the "decertification stage." *Mooney*, 54 F.3d at 1213. At the notice stage, the district court "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010) (per curiam) (citing *Mooney*, 54 F.3d at 1213–14). Because discovery is not usually complete at this point, "the court has minimal evidence." *Mooney*, 54 F.3d at 1214. Accordingly, the court makes this determination using a fairly lenient standard, and it typically results in "conditional certification" of the representative class. *Id.* If the court finds that the putative class members were similarly situated under this analysis, then conditional certification is warranted and the plaintiff is given the opportunity to send notice to potential class members. *Id.*

Once plaintiffs have opted in and discovery is complete, the court and defendant have more information on the case. *Id.* At this point, the defendant may file a decertification motion— triggering the second stage of the *Lusardi* approach. *Id.* At this step, the court makes a final determination as to whether the class members are similarly situated, allowing the representative action to proceed to trial or decertifying the class. *Id.* If the class is decertified, the opt-in

plaintiffs are dismissed without prejudice while the original plaintiffs proceed to trial on their individual claims. *Id.*

The present case is at the "notice stage" of the *Lusardi* analysis. Because the standard at this stage is lenient, a plaintiff need only make a minimal showing to guide the court's determination whether to issue notice to potential class members. *Id.* This lenient standard requires only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1214 n.8 (internal citation and quotation marks omitted). "Generally, to meet this burden, a plaintiff must show (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Vasquez v. Am. Bor-Trench, Inc.*, 4:12-CV-3181, 2014 WL 297414, at *3 (S.D. Tex. Jan. 23, 2014) (internal citations and quotation marks omitted). In evaluating these elements, courts consider factors such as whether potential plaintiffs were identified, whether affidavits of potential plaintiffs were submitted, and whether evidence of a widespread discriminatory plan was submitted. *Velazquez v. FPS LP*, 4:13-CV-1563, 2014 WL 3843639, at *4 (S.D. Tex. Aug. 4, 2014) (internal citations and quotation marks omitted).

**B.  Analysis**

WCA appears to misunderstand the leniency of the first-step of *Lusardi* when, as here, discovery is far from complete. *See, e.g.*, *Blake v. Hewlett-Packard Co.*, 4:11-CV-592, 2013 WL 3753965, at *4 (S.D. Tex. July 11, 2013) (collecting cases and noting that the leniency imposed at the *Lusardi* step is commensurate with the amount of discovery completed). With a discovery deadline months away, Plaintiffs' burden at this point is only minimal. *Id.* Thus, arguments

addressed to the merits of the claims have little to no role to play in the conditional-certification analysis. *See Medina v. Alicia's Mexican Grille Inc.*, 4:15-CV-1192, 2016 WL 3226170, at *2 (S.D. Tex. June 13, 2016) ("Usually at the notice stage, because discovery has not yet occurred, courts do not review the underlying merits of the action in deciding whether to conditionally certify the class." (citing *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012))). Indeed, in order to prevail at the *Lusardi* first step, Plaintiffs need only demonstrate through some evidence that other aggrieved individuals exist, they are similarly situated to the plaintiff, and those individuals want to opt-in to the lawsuit. *Romero v. J&F Analysts Inc.*, 4:15-CV-00790, 2016 WL 612594, at *3 (S.D. Tex. Feb. 16, 2016) (citation omitted).

Here, plaintiffs have presented evidence in the form of declarations and opt-in notices for twenty-two individuals (in addition to the declarations of the lead plaintiffs, Velasquez and Ortiz). Both lead plaintiffs and each of the opt-in plaintiffs avers that he was employed as a "driver" or "helper," worked in excess of 40 hours a week, and was paid a flat rate in violation of the FLSA's overtime requirements. (*See* Docs. 11-2 at 1–18, 29, 35–42, 44, 46, 48, 50, 52, 54, 56–57, 62.) All of these individuals also have unmistakably indicated their willingness to participate in the action by filing notices of consent. (Docs. 1-1 at 2, 1-2 at 2, 4, 6–8, 21–28, 34, 43, 45, 47, 49, 51, 53, 55, 58, 61.) In light of the foregoing, the Court concludes that Plaintiffs have met their three-element burden under *Lusardi*.

### III. The Motions for Leave to Amend and to Extend

In their Motion to Amend, Plaintiffs argue that the additional plaintiffs must be afforded a right to enter the lawsuit or be allowed to be added in as class members. (Doc. 63 at ¶ 7.) Plaintiffs claim they have good cause to amend because the additional plaintiffs have already been identified and filed notices of consent and WCA would not be prejudiced by the proposed

amendment because the Court has not yet ruled on Plaintiffs' Motion for Class Certification. (*Id.*) Plaintiffs further argue that the Motion to Amend was not filed in bad faith and there will be no undue delay by granting it. (*Id.* at ¶ 8.)

WCA responds that the addition of the twenty-two plaintiffs as named parties would add nothing because they will be subject to the Court's judgement as opt-ins if the class is certified. (Doc. 65 at 3.) WCA goes on to argue that even if this Court dismissed the current or future opt-ins from the suit, however, nothing precludes them from initiating their own suits. (*Id.*) Citing the standard for permissive intervention under Rule 24, WCA also claims that the interests of the twenty-two additional plaintiffs are already adequately represented by Velasquez and Ortiz, so their addition as named plaintiffs will not significantly contribute to the case. (*Id.*)

### A.  Legal Standards

#### i.  Rule 15(a)

A district court has broad discretion in granting leave to amend. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Nevertheless, Rule 15(a) admonishes courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a). This liberal amendment policy contributes to the overarching policy of the Federal Rules of Civil Procedure—"to facilitate a proper decision on the merits," *Conley v. Gibson*, 355 U.S. 41, 48 (1957)—by allowing parties to have an opportunity to present their best case based on claims and defenses that, for one reason or another, may have become apparent only after the pleadings have been filed. Accordingly, leave to amend should be granted absent some justification for refusal such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman v. Davis*,

371 U.S. 178, 182 (1962).

### ii.  Rule 24

Rule 24(b) governs permissive intervention and provides, in relevant part: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Whether to permit intervention pursuant to Rule 24(b) "is wholly discretionary with the district court even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (per curiam). Nevertheless, "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained." *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001) (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

### B.  Analysis

Plaintiff appears to be urging its Motion to Amend as a backstop to its Motion for Class Certification. As discussed above, Plaintiffs' class meets the standard for conditional certification. Accordingly, all twenty-two of the individuals who seek to become named plaintiffs may now participate in the litigation as opt-ins. Nevertheless, because there is a risk of decertification of the class and Plaintiffs meet the lenient standards for amendment, the Court concludes that their Motion to Amend should be granted.

Although Plaintiffs cite Rule 15's standards and WCA confusingly responds by citing Rule 24, Plaintiffs' Motion to Amend is appropriate under either rule. Motions to amend are governed by Rule 15(a)'s lenient standard unless they are filed after the deadline outlined in the scheduling order. *S&W Enters., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003). The Scheduling Order in this case, input on January 13, 2016, provides that the deadline

for motions to amend pleadings and add parties is March 30, 2016. (Doc. 32.) Plaintiffs' Motion to Amend was filed on March 30, 2016, and is, therefore, timely. Further, there is no evidence of bad faith or dilatory motive on Plaintiffs' part. Although the conditional class certification achieves the same ends, amendment to add new party plaintiffs is not futile because should this Court decide to decertify the class at the second step of *Lusardi*, the opt-in plaintiffs would be dismissed from the case if they were not parties to the action of their own right. There is also no prejudice to WCA by the addition of the twenty-two new party plaintiffs because these plaintiffs are not asserting any new claims against WCA, and they are part of the same class of individuals that Plaintiffs first proposed to certify in their original complaint. *See Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 49 (E.D.N.Y. 2015) (finding no prejudice to defendant by the addition of four FLSA plaintiffs under Rule 15(a) because the new plaintiffs were not asserting new claims); *Perkins v. S. New England Tel. Co.*, CIV.A. 3:07-CV-967JC, 2009 WL 3754097, at \*5 (D. Conn. Nov. 4, 2009) (concluding that defendant was not prejudiced by the amendment of new plaintiffs because the complaint put the defendant on notice that new parties may be added when it stated that plaintiff was asserting FLSA claims on behalf of himself and others similarly situated).

Plaintiffs' Motion to Amend also meets the Rule 24 standards. Because all of the new plaintiffs are also current or former WCA employees, are from the same class as Velasquez and Ortiz, and assert FLSA overtime claims, the new plaintiffs' claims "share[] with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Plaintiffs' motion is granted.

### IV. The Motion for Summary Judgment and Alternative Motion to Dismiss

WCA argues that Plaintiffs have not presented a scintilla of evidence that it miscalculated overtime rates and thereby undercompensated Plaintiffs. (Doc. 64 at 7–8.) WCA goes on to argue that because Ortiz never notified WCA of his alleged overtime work—and never

mentioned it until his deposition, at which point he offered no approximations of the number of times or amounts involved—Ortiz's "off-the-clock" claims fail. (*Id.* at 8–10.)

If summary judgment is denied, WCA urges that a number of opt-ins must still be dismissed from the litigation to pursue arbitration of their claims because they were employed by WCA after the effective date of the CBA—the terms of which require that wage claims be referred to arbitration. (Doc. 64 at 10–12.)  WCA does not invoke any particular rule as grounds for dismissal of the post-CBA claims. Instead, it simply argues that "[b]ecause [these claims] are covered by the CBA, the clear and express terms of the CBA require dismissal of their claims in this litigation for referral to arbitration." (*Id.* at 10.) WCA further asserts that because opt-in plaintiff Michael Streeter was an exempt-salaried employee not subject to FLSA overtime requirements, his claims must also be dismissed. (*Id.* at 12.)

### A.  Legal Standards

#### i.  Summary Judgment

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewed in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1996) (quoting Fed. R. Civ. P. 56) (internal quotation marks omitted). Where the nonmovant bears the burden of proof at trial, the movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but does not have to, negate the elements of the nonmovant's case to prevail on summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. Nat'l Wildlife*

*Fed.*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading, or unsubstantiated or conclusory assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause of action. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

Allegations in a plaintiff's complaint are not evidence. *See, e.g.*, *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[P]leadings are not summary judgment evidence." (citation omitted)); *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1995) (for the party opposing the motion for summary judgment, "'only evidence—not argument, not facts in the complaint—will satisfy' the burden.") (quoting *Solo Serve Corp. v. Westtown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991)). The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (quoting *Celotex*, 477 U.S. at 324) (internal quotation marks omitted). The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant, but the court may not make credibility determinations

or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). There is no genuine issue for trial if a rational trier could not find for the nonmoving party based on the evidence presented. *Nat'l Ass'n of Gov't Emps.*, 40 F.3d at 712–13 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584–88 (1986)).

Moreover, the district court does not have a duty to "sift through the record in search of evidence" to support the nonmovant's opposition to a motion for summary judgment. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)) (internal quotation marks omitted). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which he bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322. In the absence of any proof, the Court will not assume that the nonmoving party could or would prove the essential facts necessary to support a judgment in favor of the nonmovant. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Lujan*, 497 U.S. at 888).

### ii.  Motion to Dismiss

Because Rule 12 does not specifically provide a provision for dismissal based on an arbitration clause, there is inconsistency among the Circuits regarding whether Rule 12(b)(1), 12(b)(3) or 12(b)(6) is the proper vehicle for dismissal. *See Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 732 n.5–7 (7th Cir. 2005) (collecting cases); *see also Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005); *McGee v. W. Express, Inc.*, 3:15-CV-3673-K, 2016 WL 1622632, at *2 (N.D. Tex. Apr. 5, 2016), *report and recommendation adopted*, 3:15-CV-3673-K, 2016 WL 1627662 (N.D. Tex. Apr. 22, 2016). Despite this split, the Fifth

Circuit has stated that when the parties' dispute is subject to binding arbitration, a district court lacks subject-matter jurisdiction under 12(b)(1). *Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014) (citations omitted). "Under that standard, the burden of proof . . . is on the party asserting jurisdiction." *Id.* (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam)) (internal quotation marks omitted). "In order to bear that burden, the party 'must prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and evidence.'" *Id.* (quoting *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012)). A motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Ramming*, 281 F.3d at 161 (5th Cir. 2001) (citation omitted).

## B. Analysis

### i. *Overtime Claims*

On January 13, 2016, a Scheduling Order was entered in this case. (Doc. 32.) Pursuant to that order, the discovery deadline is not until October 30, 2016. (Doc. 32.) Nevertheless, on April 5, 2016, only three months later and with over six months left before the expiration of the discovery period, WCA filed the instant Motion for Summary Judgment. (Doc. 64.) In their response, Plaintiffs urge that the Motion for Summary Judgment is premature because discovery is ongoing and "[n]umerous depositions remain to be taken, including the deposition of Defendant's corporate representative and alleged author of Defendant's illegal pay scheme." (Doc. 67 at ¶ 2.) Plaintiffs further assert that Defendant recently produced tens of thousands of documents that directly relate to Plaintiffs' claims and, due to their volume, will take several weeks to copy before Plaintiffs can even begin reviewing them. (Doc. 70 at ¶¶ 4–5.)

Generally, "summary judgment [must] be refused where the nonmoving party has not had

the opportunity to discover information that is essential to his opposition." *Liberty Lobby*, 477 U.S. at 250 n.5 (1986); *see also Ala. Farm Bureau Mut. Cas. Co., Inc. v. Am. Fidelity Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979). When a nonmoving party needs more time to conduct discovery in order to adequately combat a summary judgment motion, they may "seek the shelter of Rule 56." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991). Under Rule 56(d), the court may defer consideration of the motion, deny it, allow additional time for discovery, or issue any other appropriate relief. Fed. R. Civ. P. 56(d). Although usually supported by an affidavit and separate motion, "[a]n affidavit is not necessary where the circumstances are such that the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery and when fact-intensive issues, such as intent, are involved, provided that the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary." *Holden v. Ill. Tool Works, Inc.*, CIV.A. H-08-2783, 2009 WL 2044649, at *10 (S.D. Tex. July 8, 2009) (internal citation and quotation marks omitted), *aff'd*, 429 Fed. App'x 448 (5th Cir. 2011) (per curiam) (unpublished). Thus, a party's brief in which it opposes the motion for summary judgment and advises the court of the need for additional discovery serves as the "functional equivalent" of a Rule 56(d)(1) motion and affidavit. *See Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir.1992) ("Although it is preferred that non-movants present an affidavit to support a continuance of discovery, there is no stringent procedure that will bar litigants access to further discovery. In order to trigger the rule non-movants need only submit an 'equivalent statement preferably in writing' that conveys the need for additional discovery." (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986))). Nevertheless, the non-movant must make its request prior to the court's ruling on the summary judgment motion, put the court on notice that further

discovery is sought, and demonstrate specifically how the requested discovery pertains to the pending motion. *Wichita Falls*, 978 F.2d at 919 (citing *Int'l Shortstop*, 939 F.2d at 1268.) Additionally, the non-movant must diligently pursue relevant discovery. *Int'l Shortstop*, 939 F.2d 1267.

The Court is persuaded that Plaintiffs need further time to conduct discovery so that they may adequately prepare a defensive response. Accordingly, WCA's Motion for Summary Judgment is denied with regard to Plaintiffs' overtime claims without prejudice to refiling, if appropriate, in light of the information disclosed in discovery.

### ii.   *Opt-In Plaintiffs' Post-CBA Claims*

WCA argues that because Article 14 of the CBA states that "[t]o the extent that employees are paid on a day rate and/or receive incentive pay, the Company will comply with the requirements of the Fair Labor Standards Act" (Doc. 64-5 at 4), the CBA expressly incorporates the FLSA and its provisions. (Doc. 64 at 10–12.) Accordingly, the argument goes, because the CBA requires arbitration of all grievances, which are defined as "a claim, request, complaint, or dispute by an employee" (Doc. 64-5 at 6), the opt-in plaintiffs whose claims arose after the effective date of the CBA must arbitrate their FLSA claims. (Doc. 64 at 10–12.)

Plaintiffs do not dispute that arbitration is required under the express terms of the CBA, responding instead with an allegation that WCA created the CBA in bad faith and that exhaustion of administrative remedies under the CBA is not required because employees have already complained to the company and union who have failed to take any action. (Docs. 67 at 18–19, 70 at 7–8.) Plaintiffs next argue that because they did not understand or agree to the CBA, there was no majority approval of the union's representation, and, therefore, the union did not have the right to waive individual employee rights. (Doc. 70 at 8.) Plaintiffs do not further

develop this argument, nor do they direct the Court to any authority for this proposition. Nevertheless, the Court takes this to be an argument against the validity of the CBA. Finally, even had there been majority approval, Plaintiffs allege that the union breached its duty of fair representation by declining to take Plaintiffs' grievances to arbitration and acting in bad faith. (*Id.*)

A court may order arbitration only where the court is satisfied that the parties agreed to arbitrate that dispute. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (citation omitted). Accordingly, the Court will begin with Plaintiffs challenge to the validity of the CBA. *See Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 219 (5th Cir. 2003) ("[W]here a party attacks the very existence of an agreement . . . the courts must first resolve that dispute."). Arbitration is a matter of contract. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal citation and quotation marks omitted); *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir. 2011) (internal citation and quotation marks omitted). Questions about contract formation, whether the parties ever agreed to the contract in the first place, are generally for the courts to decide. *Granite Rock*, 561 U.S. at 297 (citation omitted).

Whether or not there was a valid contract must be based upon objective standards of what the party said and did. *Slade v. Phelps*, 446 S.W.2d 931, 933 (Tex. Civ. App.—Tyler 1969, no writ). In Texas,[9] the general rule is that every person who has the capacity to enter into a contract is held to know what words were used in the contract, to know their meaning, and to understand their legal effect. *Indem. Ins. Co. of N. Am. v. W.L. Macatee & Sons*, 101 S.W.2d 553, 556 (Tex. 1937) (citations omitted); *Vera v. N. Star Dodge Sales, Inc.*, 989 S.W.2d 13, 17 (Tex. App.—San Antonio 1998, no pet.) (citation omitted); *Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d 835, 846

---

[9] The parties do not contest that Texas law applies.

(Tex. App.—Houston [14th Dist.] 1996, writ denied) (citation omitted). The consequence of this rule is that a party to a contract may not successfully claim that he believed the provisions of the contract were different from those plainly set out in the agreement, or that he could not understand the meaning of the language used. *Nguyen Ngoc Giao v. Smith & Lamm, PC,* 714 S.W.2d 144, 146 (Tex. App.—Houston [1st Dist.] 1986, no writ). This is generally the case even if illiteracy or a language barrier are the cause of the misunderstanding. *Id.* Nevertheless, long-established and well-known contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate contracts in such cases. *In re Ledet*, 04-04-00411-CV, 2004 WL 2945699, at *5 (Tex. App.—San Antonio Dec. 22, 2004, no pet.) (mem. op.) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)) (internal quotation marks omitted). The burden of proving such defenses is on the party opposing the contract. *See, e.g.*, *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001) (citation omitted); *Clark v. Power Mktg. Direct, Inc.*, 192 S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citation omitted); *FDIC v. White*, 76 F. Supp. 2d 736, 739 (N.D. Tex. 1999) (citation omitted).

Because there is a complete absence of allegations or evidence of fraud or duress, the Court takes Plaintiffs' challenge to the CBA to be one of unconscionability. Unconscionability has both procedural and substantive aspects. *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002) (citation omitted). The former refers to the circumstances surrounding the adoption of the contract, while the latter refers to the fairness of the contract itself. *Id.* (citation omitted).

The only situations in which Texas courts have found an agreement to be procedurally unconscionable are "those in which one of the parties was incapable of understanding the agreement without assistance, and the other party did not provide that assistance, such as where one of the parties was functionally illiterate or where one of the parties did not speak English."

*BBVA Compass Inv. Solutions, Inc. v. Brooks*, 456 S.W.3d 711, 724 (Tex. App.—Fort Worth 2015, no pet.) (collecting cases). *See also Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002) (collecting cases). For example, in *Prevot v. Phillips Petroleum Co.* the court concluded that an arbitration agreement was procedurally unconscionable because the Plaintiffs could not read English, the documents were not translated for them, they did not know what they were signing, and their superiors instructed them to "not worry about it" and "quickly sign the documents so they could get back to work" when the plaintiffs asked for clarification. 133 F. Supp. 2d 937, 940 (S.D. Tex. 2001). Similarly, in *In re Turner Bros. Trucking Co.*, the court found that an agreement was procedurally unconscionable where one of the parties was functionally illiterate, nobody explained the agreement to him, and the person who gave him the agreement to sign did not understand the agreement and could not provide him with assistance in understanding it. 8 S.W.3d 370, 377 (Tex. App.—Texarkana 1999, no pet.)

In contrast, in *In re Ledet* the court declined to find procedural unconscionability even though the plaintiff could not understand, read, or speak English, no one explained the agreement to him, and he felt pressured to sign it because there was someone available to translate and explain the agreement to the plaintiff, but he did not ask questions of or seek clarification from this individual. 2004 WL 2945699, at *5–6. Likewise, the court in *Superbag Operating Co., Inc. v. Sanchez* concluded that there was no procedural unconscionability where the non-English speaking plaintiff was supplied with and signed a Spanish version of the agreement even though he later argued that he did not understand the agreement. 01-12-00342-CV, 2013 WL 396247, at *6 (Tex. App.—Houston [1st Dist.] Jan. 31, 2013, no pet.).

Like the non-English speaking plaintiffs in *Prevot* who were not provided assistance in understanding a document they could not read but pressured to sign anyway, Plaintiffs have

provided the Court with evidence that they did not understand the CBA because it was only provided in English (even though they requested copies in Spanish), no one explained it to them, attempts to obtain clarification of the terms were rebuffed, and they were encouraged to hastily sign it before Spanish versions were provided. (*See* Doc. 67-7 at 3.) Such facts support a finding of procedural unconscionability. The challenged opt-in plaintiffs[10] need not be dismissed from the suit. Accordingly, the Court need not reach Plaintiffs' remaining argument about the union's duty of fair representation.

### a.  *Michael Streeter's Claims*

WCA also argues that Michael Streeter should be dismissed because, at all relevant times, he was a salaried supervisor in charge of the residential drivers, and is, therefore, exempt from FLSA coverage.[11] (Docs. 64 at 12, 69 at 10.) Plaintiffs respond that Terry Ramey's deposition testimony and a WCA Payroll Action form indicate that Streeter was, in fact, a driver. (Docs. 67 at 20, 70 at 8–9.)

Salaried employees who work "in a bona fide executive, administrative, or professional capacity" are exempt from the FLSA's overtime requirements. 29 U.S.C. § 213(a)(1); *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 264 (5th Cir. 2000) (citing 29 U.S.C. § 213(a)(1)). However, to be covered under one of these exemptions, employees must be compensated equal to or more than the salary-basis rate outlined for each exemption and meet other defined criteria.[12] 29 C.F.R. §§ 541.0–541.304.

---

[10] The challenged plaintiffs are: Carlos Escobar, Roland DeLaCruz, Jose Madrid, Carlos Madrid, Marceleno Machado, Luis Barrera, Juan Herrera Fuentes, Lino Villagomez, Jose M. Diaz, Jose Rios Herrera, Balteza Garcia, Lazaro Echaniz, Ascencion Canales. (Doc. 64 at 11.)

[11] Although pled as an alternative to the motion for summary judgment, at its heart, WCA's call to dismiss Streeter is a Rule 56 matter-of-law argument, not a 12(b)(6) failure-to-state-a-claim argument.

[12] For example, to qualify for the administrative exemption, an employee must (1) be paid on a

Here, the parties fail to address any of the exemption requirements in their briefs. In fact, all they do is direct the Court to deposition testimony in which Ramey states that Streeter "was like a route supervisor, but he drove trucks, too . . . . a route supervisor there was like a lead guy," (Doc. 69-2 at 8), and a WCA "Payroll Action Form" which reflects that Streeter's position was titled "Route Supervisor" at a salaried rate of pay prior to October 7, 2013—after which he was reclassified as a "Lead Driver" at $14.00 per hour (Doc. 70-2 at 2). However, far from settling the issue in either party's favor, this evidence is inconclusive. Although the payroll form does state that Streeter was "salaried," it does not disclose the amount of his salary and there is no other indication in the record that his rate of pay met the exemption requirements. Without knowing what Streeter's salary rate or duties were it is impossible for the Court to conclude that Streeter should be dismissed. To the contrary, the few materials submitted by and relied on by the parties raise a fact issue as to Streeter's classification and whether he falls within the FLSA's overtime exemptions. WCA's Motion for Summary Judgment is, therefore, likewise denied as to Streeter's claims.

---

salary or fee basis at a rate of not less than $455 per week, (2) have a primary duty of performing "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) have primary duties that include "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. §§ 541.200(a)(1)-(3), 541.201; *King v. Stevenson Beer Distrib. Co.*, 11 F. Supp. 3d at 783–84. "[T]he exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term 'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a). It is the actual day-to-day activities of the employee, not the labels the employee or the employer apply to those duties, that determine whether the employee is exempt under the FLSA. *Tyler v. Union Co. v. Calif.*, 304 F.3d 379, 404 (5th Cir. 2002) (citation omitted); *Kohl v. Woodlands Fire Dep't*, 440 F. Supp. 2d 626, 638 (S.D. Tex. 2006).

**V. Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiffs' Motion for Class Certification (Doc. 11) and Motion for Leave to Amend Pleadings and Add New Parties (Doc. 63) are **GRANTED.** Accordingly, Plaintiff's Motion to Extend Deadlines (Doc. 60) is **MOOT**. It is further

**ORDERED** that WCA's Motion for Summary Judgment and Alternative Motion to Dismiss Claims of Certain Opt-Ins (Doc. 64) is **DENIED**.

SIGNED at Houston, Texas, this 23rd day of August, 2016.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE